### Clotilde Quintana v. Consolidated Kansas City Smelting & Refining Co.

Delivered September 30, 1896.

**1. Master and Servant—Latent Defect.**

Where an employe was injured by being struck by a car in rapid motion, and the evidence tended to show that the accident resulted from the parting of a wire cable from a hook at its end, causing the breaking of the cable within the socket forming a part of the hook to which the cable was fastened, and that such fastening was made after the most approved method, and that there was no perceptible defect in the cable before it was put in, the court was authorized to charge on latent defects, and that the master would not be liable for injuries to the servant resulting from such defects in the appliances furnished.

**2. Same—Degree of Care Required of Master.**

The master in furnishing apparatus for the use of the servant and keeping the same in repair, is required to use only the skill and care of a man of ordinary care under like circumstances.

**3. Same—Charge of Court—"Diligence" and "Skill."**

A charge of court requiring the master, in arranging and fastening machinery for the use of the servant, to use ordinary "diligence," instead of "skill," is not material error.

**4. Injury to Employe—Allegata and Probata—Charge.**

Where the negligence charged in plaintiff's petition was only that a cable was improperly fastened to a hook, but there was evidence from which it might be inferred that the cable parted from the hook because of the manner in which a car being lowered thereby was stopped, the court properly charged that there could be no recovery if the accident occurred from such latter cause.

Appeal from El Paso. Tried below before Hon C. N. Buckler.

*D. Storms* and *Millard Patterson*, for appellant.—1. The court erred in charging the jury "that the employer in this case was only required to use such diligence in detecting and remedying defects as a man of ordinary care would have exercised under like circumstances, and that the master is not liable for latent defects which may exist in the machinery, which defects he could not have discovered by the use of ordinary diligence, prior to the happening of the accident." Railway v. Williams, 82 Texas, 345; Lumber Co. v. Denham, 85 Texas, 62.

2. The court erred in the fourth paragraph of its charge in instructing the jury "that the defendant would not be liable simply because of the happening of the accident which resulted in the death of Ramon Quintana." This portion of the court's charge was calculated to mislead and improperly influence the jury and was not a correct statement of the law, as the jury, with the fact of the accident before them, as presented in the undisputed evidence, and the evidence showing the cause of the accident and the defect which occasioned it, may have, from the happening of the accident, with the conditions disclosed, have determined that the defendant was guilty of negligence, or that the accident would not have happened without culpable negligence upon the part of the defendant. McRea v. Railway, 34 S. W. Rep., 96; Railway v. Anderson, 20 Am. St. Rep., 490.

*Falvey & Davis*, for appellee.—1.   The charge of the court is correct on the proposition that Ramon Quintana, on entering the employment of defendant, assumed all risks of such latent defects as were not discoverable by the exercise of that degree of diligence which a man of ordinary care and diligence would have exercised under like circumstances; when defendant discharges its duty, under the law, in furnishing machinery, plaintiff then assumes all risks.   Railway v. Crenshaw, 71 Texas, 345; Railway v. Hoffman, 83 Texas, 290 (18 S. W. Rep., 742); Lumber Co. v. Denman, 19 S. W. Rep., 1013; Railway v. Wells, 17 S. W. Rep , 511.

2.   The charge of the court, "That the defendant would not be liable simply because of the happening of the accident which resulted in the death of Ramon Quintana, was correct.   Railway v. Shieder, 88 Texas, 161.

NEILL, Associate Justice.—This suit was brought by appellant against appellee to recover damages for the death of her son, Ramon, which was caused from injuries inflicted by the alleged negligence of appellee while he was in its service, performing the duties of his employment.

The evidence contained in the record warrants us in finding the following conclusions of fact:

In June, 1895, the appellee was engaged in operating a smelter near the city of El Paso.   At that time Ramon Quintana, a son of appellant, was one of its employes, whose duty it was to enter a pit at the bottom of an incline, into which cars were run for the purpose of carrying ores and slag therefrom to the feed-floor in the second story of the smelter building.   The cars were lowered and raised to and from the pit by means of a wire cable attached to them with a hook fastened to its end. When Ramon was in the pit in the performance of his duties, one of the cars so attached to a cable was started down the incline and an attempt was made to stop it in the usual manner, which was by preventing the cable from running off the drum on which it was wound, the hook was pulled off the cable, and the car, in consequence, ran with great violence down the incline and against Ramon Quintana, causing his death.   The appellee, in fastening the hook, which pulled loose, to the cable and in keeping it securely fastened, used that degree of diligence which a man of ordinary care and prudence would have exercised under like circumstances; and, in failing to have and keep such hook securely fastened to the cable, it was guilty of no negligence towards the deceased.

In connection with our conclusions of law, some of the evidence upon which the above findings are predicated will be stated from the record.

*Conclusions of Law.*—The court instructed the jury that, "When one accepts employment from another he assumes such risks as may

exist from latent defects in machinery or appliances with which he is engaged in the discharge of his employment. Latent defects are such as may exist in machinery and appliances, but which are not discoverable by the exercise of that degree of diligence which a man of ordinary care and diligence would have exercised under like circumstances; but he does not assume such risks as may arise from the negligence of the person employing him—for instance, such as may arise from defects in machinery which he is provided with by his employer, if such defects exist because of the negligence of his employer."

The succeding paragraph of the charge is as follows: "If you believe from the evidence that the defendant employed Ramon Quintana in and about its cars used to elevate ores, then it was defendant's duty to use reasonable diligence to supply said cars with reasonably safe appliances, and use reasonable diligence in adjusting such appliances, and use such diligence to keep them in reasonably safe condition. By the use of the terms "reasonable diligence" as here used, is meant such diligence as a man of ordinary care would have exercised under like circumstances. The employer is not required to resort to all means that human foresight or ingenuity might suggest in detecting defects in machinery or appliances, but only such diligence in detecting and remedying defects as a man of ordinary care would have exercised under like circumstances. Neither is the master liable for latent defects which may exist in the machinery, which defects he could not have discovered by the use of ordinary diligence, prior to the happening of an accident."

The objections urged in appellant's assignments to the paragraphs of the charge quoted are: 1, that a latent defect being one not obvious, is, in this case, a matter of no consequence or importance, and should have not been submitted; for if the plaintiff was entitled to recover, it was upon the ground that the end of the cable had not been properly and skillfully fastened in the hook-socket, and the negligence of the defendant consisted in doing the work of the fastening in such careless, unskillful and improper way that the accident happened; 2, that under the law, it was the duty, in this case, of the employer to use a high degree of care in keeping the machinery and appliances in repair, and it was under an obligation to use a high degree of care and skill in fastening the end of the cable in the hook-socket, and, to accomplish this end, it was incumbent upon the master to see that all the work done in fastening the end of the cable in the hook-socket was done in a proper, skillful and effectual way; and, 3, the attention of the jury was repeatedly called in the charge to a possible latent defect, when its existence or non-existence was of no importance so far as the right of the plaintiff to recover is concerned.

These objections, except the second, do not question the soundness of the principles announced as abstract propositions of law. The first goes to the applicability of the principles to the case, as it is made by the pleadings and the evidence. A succinct recital, therefore, of plain-

tiff's statement of her cause of action and of the evidence adduced on the trial, is necessary to an understanding of the points made by appellant on these assignments, as well as to a comprehension of our view of the law upon them.

The negligence charged in plaintiff's petition was in not having the hook referred to in the part of the charge quoted, securely fastened to the cable, and in having the fastenings in a bad, defective and dangerous condition at the time of the accident, and in allowing the same to become out of repair, and that defendant knew or could have known by the exercise of ordinary care of the bad, defective and dangerous condition of said hook and cable.

The evidence shows that the end of the cable to which the car was attached passed into a socket about three and one-half inches long, at the end of and forming a part of the hook by which the cable was connected with the car. From this diagram and the following evidence will be seen and understood how the cable was fastened to the hook:

One end of the cable was run through the socket, then the wires forming the cable were untwined and spread about an inch or an inch and a half, so a part of the cable in the socket was divided. The ends of the strands were then bent back in the socket and melted lead poured in the larger end of the socket, which ran down between the wire strands and the cable and socket so as to imbed the wire fibres and cable and make the parts in the socket invisible. This method of fastening, adopted in this case, was, according to the testimony of experts, the best and most approved. The cable attached to the hook was such as was generally used for the purpose to which it was applied, and was considered good and sufficient for that work, there being no evidence of any visible defects in any part of it. It had been in use about three weeks, during which time it drew up the incline loaded cars weighing twice as much as the empty car which was being lowered when it parted from the hook-socket. The cause of this separation may have been from breaking of the cable in the socket, or from its pulling loose from it—the evidence, in our judgment, preponderating in

favor of the former theory. In the event it broke, the parting may have been caused from a latent defect in the cable. If such was the cause, the appellee, under the law, would not be responsible for its consequences. Thus the applicability and propriety of the court's charge upon latent defects are demonstrated by the pleadings and evidence.

The degree of skill and care required by the law of appellee in fastening the end of the cable in the hook socket and in keeping its machinery and appliances in repair, was correctly announced in the court's charge. Railway v. Hoffman, 83 Texas, 290; Lumber Co. v. Denman, 19 S. W. Rep., 1013; Railway v. Wells, 17 S. W. Rep., 511.

The propriety of a charge on latent defects has been shown. The first paragraph of the charge enunciates an abstract principle of law between master and servant, on such an issue; the second paragraph applies the principle so announced to the evidence developed in this case on that question. Hence undue prominence was not given by the charge to such issue.

In the third paragraph of its charge the court instructed the jury, if they believed from the evidence that the defendant, or the person who put the hook on the end of the cable, did not use reasonable diligence in fastening said hook to the end of the cable, and that the same was not properly fastened to the end of the cable, and that defendant was negligent in fastening the hook to the end of the cable in the manner it was fastened when the accident happened, and that by reason of such negligence and improper fastening, if any, said hook came out and the car was thereby allowed to run down the incline, and Ramon Quintana was thereby struck and killed, and plaintiff has been damaged thereby, to find for her. But that if they believed from the evidence that the person who put in the hook or attached it to the end of the cable used reasonable diligence in doing so, as the term is above explained, to find for defendant.

The objections urged in her assignments to this paragraph are: 1, "The court has drawn and emphasized a distinction between the failure to use reasonable care in fastening the hook to the end of the cable, and negligence of the company in fastening the hook on the cable in the manner it was fastened." 2. The word "diligence," in its connection used in the charge, was improper, and the word "skillful" should have been used instead of it. 3. That the last sentence in the paragraph quoted was erroneous, for the reason that the person who fastened the end of the cable in the hook-socket may have been guilty of negligence in not discovering that the end of the cable was in a bad, defective and unsafe condition when he fixed it in, or in not discovering that the end of the cable was in such a condition that it might break in the hook-socket.

In our opinion none of the objections to this portion of the charge are well taken. If there is such a distinction made as is claimed in the first objection, we fail to see how the appellant was injured by it; for if there was a distinction made "between the failure of the defendant to

use reasonable care in fastening the hook to the cable, and negligence of the company in fastening the hook to the cable in the manner it was," and the jury recognized such distinction and found either way, they were told that defendant was guilty of negligence and were required to find for the appellant. The use in the charge of the word "diligence" instead of "skillful," while it may not meet the approval of the fastidious in phraseology, is such as is frequently used in the same manner in our law books, and, if error, it is only so in expression, and, in our opinion, is not such in law as would justify a court in reversing a judgment.

Now, in regard to the third objection: The negligence alleged, as is seen, consisted in not having the hook securely fastened in the cable. The exercise of reasonable diligence or skill in effecting this fastening, is all the law required of the appellee, and the controversy was as to whether such diligence was used. After telling the jury what would be the consequence of appellee's failure to exercise such diligence, it was proper for the court to inform them what it would be from the exercise of such diligence; and, as the company acted through the person who made the fastening, and his acts were its acts, it was not error to use the word "person" instead of "defendant" or "company" in the last sentence of the paragraph of the charge complained of. Nor was it error, in view of the negligence alleged, for the court to instruct the jury, that they "could only find against the defendant in the event they believed from a preponderance of testimony that the defendant or person who adjusted the hook did not exercise that degree of care which a reasonably prudent man would have exercised under like circumstances; and believed the hook was improperly fastened, and that the accident was thereby caused," for the plaintiff was restricted in her right to recover to the ground of negligence averred in her petition. Hence the appellant "was not liable simply because of the happening of the accident which resulted in the death of Ramon Quintana," and the court committed no error in so informing the jury.

The inference might have been drawn by the jury from the evidence that the cable parted from the hook socket on account of the manner in which the car was being lowered or stopped, at the time or just before it struck the deceased, and as the manner of stopping the car or lowering it was not alleged as a ground of negligence causing the injury, it was proper for the court to instruct the jury that the defendant would not be liable if the accident occurred from such cause.

In the fourth paragraph of its charge the court instructed the jury, that the defendant would not be liable if they "believed from the evidence that the cable broke inside the socket by reason of some defect which might have existed in the cable, because the undisputed evidence shows that if such defect existed in the cable within the socket, such defects could not have been discovered by the use of ordinary diligence." This part of the charge is complained of in appellant's seventh assignment of error as "improper for the reason that if the defect existed in the cable,

it may have existed in the same before the cable was put in the hook-socket." The uncontroverted evidence clearly shows that if there was any defect in the cable when it was placed in the socket, it could not be perceived, and it is equally clear that if such defect existed it was imperceptible after the cable had been placed in the socket. If therefore such defect existed, it was not discoverable by the use of reasonable diligence and the appellee would not be liable for its consequences; for Ramon assumed the risk of such defect in entering and continuing in appellee's employment. Therefore the assignment is without merit.

The appellant's counsel asked the court to instruct the jury as follows: "If you believe from the evidence there was a defect in the hook-socket, which was latent or could not be seen by inspection, and that the ore car fell and ran down the incline in consequence of such defect, and that said defect, although the same could not be seen, existed in consequence of the fact that the cable end was fastened in the hook-socket in an unskillful manner, and in a way that was not reasonably safe, the defendant in this case would be liable to the plaintiff, and if you believe that she has been damaged you will find in her favor." The court's refusal to give the charge is assigned as error. We will remark here that counsel, by requesting this instruction, seem to recognize that there was some "question of latent defect logically connected with this case." But, as is observed by counsel for appellant in their brief, "The theory upon which this case was tried, and the only rational theory upon which it could be tried, was that the individual who fastened the cable end into the hook-socket did it in an improper and unskillful way." This theory of appellant was fairly presented to the jury in the court's charge and the question as to whether the individual who fastened the cable end into the hook-socket did it in an improper and unskillful manner, having been properly submitted in the general charge, it was unnecessary to again present the question by giving the special instruction requested.

Our conclusions of fact determine appellant's assignment of error, which complains of the insufficiency of the evidence to support the verdict, against her.

No error is assigned which requires a reversal of the judgment, and it is affirmed.

Writ of error refused.                               *Affirmed.*